## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CHANGIZ M. KHOEI, *et al*., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-2181 |
| | § | |
| STONEBRIDGE LIFE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND OPINION

Changiz Khoei and Avisha Khoei sued Stonebridge Life Insurance Company, formerly J.C. Penney Life Insurance Company, in Texas state court.  The Khoeis claimed that Stonebridge wrongfully denied them benefits under a policy Mr. Khoei had with Stonebridge.  The Khoeis claimed benefits under the Stonebridge policy for injuries Mr. Khoei sustained when he was assaulted while he and his wife were sitting in a car.  Stonebridge denied the claim on the ground that the policy was for death and dismemberment, covering only loss of life, loss of one or both hands or feet, and loss of the sight in one or both eyes.  The Khoeis asserted claims for breach of contract, violations of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act (DTPA) and the Texas Insurance Code.  (Docket Entry No. 16 at ¶ 13).  Stonebridge timely removed and then moved to dismiss the Khoeis' claims under Federal Rule of Civil Procedure Rule 12(b)(6).  (Docket Entry Nos. 1, 14).

Based on the motions, the pleadings, the parties' submissions, and the applicable law, this court grants Stonebridge's motion to dismiss.  Because the Khoeis have previously amended, and

because the pleadings show that further amendment would be futile, the dismissal is with prejudice and final judgment is entered by separate order.

The reasons for this ruling are explained below.

**I.     The Allegations in the Complaint**

In August 1992, a telemarketer contacted Mr. Khoei about purchasing insurance from J.C. Penney.  (Docket Entry No. 16 at ¶ 1).  The telemarketer allegedly told Mr. Khoei that he could purchase a comprehensive insurance policy that would cover accidents and risks not already covered by his automotive and health policies.  (*Id.*).  The telemarketer "implied" that the policy would cover injuries from accidents up to the policy limits.  (*Id.*).  The telemarketer did not say that the policy covered only loss of life or of a foot, hand, or sight of an eye.  (*Id.*).

Mr. Khoei purchased a policy from J.C. Penney.  (*Id.* at ¶ 2).  The policy's effective date was January 19, 1993 and it remained effective at all relevant times.[1]  The policy certificate stated in capital letters on the front page:  "Group Accident Insurance Providing Accidental Death and Dismemberment Benefits."  (Docket Entry No. 14, Ex. 1 at 2).  The policy divided coverage into three parts. Part II is relevant to the Khoeis' claims.  It covers policyholders who are "injured" while "[o]ccupying a [p]rivate [p]assenger [v]ehicle."  (*Id.*, Ex. 1 at 5)  Part II stated that the policy would pay the applicable benefits referred to in "Part II of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits."  (*Id.*).  The "Schedule of Losses and Benefits" stated that benefits are paid only for "Losses."  (*Id.*).  The policy defines "Loss" as loss

---

[1] It is unclear from the record whether Mr. Khoei received the policy certificate in 1992 or 1993, but the date does not affect this analysis.

of life, loss of a hand or foot, or complete loss of sight in an eye. (*Id.*, Ex. 1 at 4). Covered loss of

a limb was limited to severance of that limb. (*Id.*). The policy excluded loss of use. (*Id.*).

The policy defined "injury" as:

> bodily injury caused by an accident occurring while the insurance is
> in force resulting:
>
> 1.   directly and independently of all other causes; and;
>
> 2.   within 90 days after the date of the accident. Loss
>       commencing more than 90 days after the date of the
>       accident will be considered a sickness.

(*Id.*). Nothing in the "Schedule of Losses and Benefits" stated that the insurer will pay the

policyholder for injuries resulting in anything other than loss of life, total loss of sight in an eye, a

hand, or a foot.

A separate section titled "Exclusions" stated that no benefits would be paid if certain

enumerated events caused the "loss or injury." (*Id.*, Ex. 1 at 6). These exclusions included losses

or injuries caused by war, the claimant operating a vehicle while intoxicated, and the claimant's self-

inflicted injuries. (*Id.*).

On March 17, 2013, Mr. Khoei was injured when he was physically attacked while sitting

in his car. (Docket Entry No. 16 at ¶ 3). Mr. Khoei's injuries required multiple surgeries. (*Id.*).

It is undisputed that Mr. Khoei did not suffer the complete loss of sight in either eye, or loss of a foot

or hand. Mrs. Khoei was in the car during the attack and was "horrified." (*Id.*).

On April 24, 2013, the Khoeis filed claims with Stonebridge. (Docket Entry No. 16, Ex. B).

Mr. Khoei claimed $100,000 for his injuries and Mrs. Khoei claimed $50,000 based on a "bystander

claim." (*Id.*). Stonebridge denied both claims, stating that the policy did not cover their alleged

injuries because neither died or suffered severance of a hand or foot or complete loss of sight in an

eye.  (*Id.*, Ex. C).  On June 26, 2013, the Khoeis sued Stonebridge in Texas state court.  (Docket Entry No. 3).  Stonebridge timely removed on the basis of diversity jurisdiction.  (Docket Entry No. 1).  Stonebridge moved to dismiss the Khoeis' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Docket Entry No. 14).

On October 10, 2013, the Khoeis filed their amended complaint.  (Docket Entry No. 16). The amended complaint asserted claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code.  (*Id.* at ¶ 13).  These claims are based on the Khoeis' contention that the policy covered Mr. Khoei's injuries.  The Khoeis asserted additional claims under the DTPA, TEX. BUS. & COM. CODE § 17.46, and the Texas Insurance Code, TEX. INS. CODE § 541.051.  These statutory extracontractual claims are based on the representations the telemarketer allegedly made about policy coverage.  The Khoeis responded to Stonebridge's motion to dismiss, in part by nonsuiting without prejudice Mrs. Khoei's bystander claim. (Docket Entry No. 21).  Stonebridge replied, (Docket Entry No. 23), and the Khoeis surreplied, (Docket Entry No. 24).

The arguments for dismissal and the responses are analyzed below.

## II.     The Applicable Legal Standards

### A.     Motions to Dismiss for Failure to State a Claim

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(B)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).  The Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677.

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint . . . courts may also consider matters of which they may take judicial notice."  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).  The court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint."  *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001).  The court may consider such extrinsic materials as the insurance policy certificate and related documents without converting the motion into one seeking summary judgment.  *See Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 404 n.5 (S.D. Tex. 2011).

### B.    Contract Interpretation

The parties agree that Texas law applies to the causes of action asserted.  Under Texas law, "[w]hether a party has breached a contract is a question of law for the court, not a question of fact for the jury."  *Meek v. Bishop Peterson & Sharp P.C.*, 919 S.W.2d 805, 808 (Tex. App. —Houston [14th Dist.] 1996, writ denied).  "The court determines what conduct is required by the parties, and, insofar as a dispute exists concerning the failure of a party to perform the contract, the court submits the disputed fact questions to the jury."  *Id.*  "While the factual determination of what actions were taken is for the fact finder, whether those actions constitute a breach of contract is a question of law

for the court." *In re Cano Petrol.*, 277 S.W.3d 470, 473 (Tex. App.—Amarillo 2009, orig. proceeding).

"When a contract is not ambiguous, the construction of the written instrument is a question of law for the court." *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). "Whether a contract is ambiguous is [also] a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Nat'l Union Fire Ins. Co v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted). Ambiguity arises "only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of [two] meanings is the proper" one. *R&P Enters. v. LaGuarta, Gavel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1989). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Nat'l Union*, 907 S.W.2d at 520. "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex 1996). In those cases, "the interpretation of a contract is a question of fact" for the jury. *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir. 1991) (citing *Toren v. Braniff, Inc.*, 893 F.2d 763, 765 (5th Cir. 1991); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987)).

A "contract is not ambiguous because it suffers from mere 'uncertainty or lack of clarity.'" *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 431 (5th Cir. 2003) (quoting *Madera Prod. Co. v. Atlantic Richfield Co.*, 1998 WL 292872, at *3 (N.D. Tex. 1998)). "'The failure to include more express language of the parties' intent does not create an

6

ambiguity when only one reasonable interpretation exists.'" *Id.* (quoting *Columbia Gas*, 940 S.W.2d at 591). Similarly, ambiguity "does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). To determine whether an ambiguity exists, the court looks "at the contract as a whole in light of the circumstances present when the parties entered the contract." *Friendswood Dev. Co. v. McDade Co.*, 926 S.W.2d 280, 282 (Tex. 1996).

### C.  Extracontractual Causes of Action

The Khoeis asserted extracontractual causes of action for violations of §§ 541.060 and 542.003 of the Texas Insurance Code and breach of the duty of good faith and fair dealing. These causes of action address an insurer's improper denial of a valid claim. Sections 541.060 and 542.003 prohibit unfair settlement practices by an insurer "with respect to a claim by an insured." TEX. INS. CODE § 541.060(a); *see also* TEX. INS. CODE § 542.003 (prohibiting unfair claim settlement practices). Section 541.060 prohibits an insurer from:

> (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
>
>> (A) a claim with respect to which the insurer's liability has become reasonably clear; . . .
>
> (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

TEX. INS. CODE §§ 541.060(a)(2)(A), (a)(7). Section 542.003 specifies that an insurer's "fail[ure] to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies" constitutes an unfair claim settlement practice under the Insurance Code. TEX. INS. CODE § 542.003(b)(3).

Similarly, "an insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *see also Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) ("[A]n insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered."). A finding that the insurance policy did not cover the insured's claim generally precludes a finding of bad faith and bars recovery of extracontractual damages relating to a claim denial. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (holding that "[w]hen the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive").

The Khoeis asserted claims under the Texas Insurance Code and the DTPA based on the telemarketer's alleged misrepresentations about the policy's coverage. Section 541.051 of the Texas Insurance Code creates a cause of action when the insurer misrepresents the terms and coverage of an insurance policy. TEX. INS. CODE § 541.051. Similarly, the DTPA creates a cause of action for "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." TEX. BUS. & COM. CODE § 17.46(a). This includes situations where an insurer misrepresents the terms of an insurance policy. *See Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 381 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("It is well established that an insurer's misrepresentation regarding coverage is actionable under the Texas Insurance Code and the DTPA against agents and companies.").

8

III.     **Analysis**

A.     **Breach of Contract and Extracontractual Claims Relating to the Denial of Benefits**

Stonebridge moved to dismiss on the ground that the policy does not cover Mr. Khoei's injuries.  The Khoeis' claims are all based on the contention that the policy covered more than the loss of life or of a hand, foot, or total sight in an eye.

Stonebridge argues that the policy unambiguously covers only those specifically enumerated losses set forth in the "Schedule of Losses and Benefits" and does not cover Mr. Khoei's physical injuries.  He was not killed in the attack and did not suffer the loss of sight in his eye or a hand or foot.  The Khoeis respond that the insurance policy is ambiguous and capable of being interpreted in a way that covers Mr. Khoei's injuries.  After construing the terms of the policy as a whole, this court concludes that the policy unambiguously covers only the loss of life, the loss of one or both hands or feet, and the complete loss of sight in one or both eyes.

Mr. Khoei claimed coverage under Part II of the "Coverage" section.  Part II covers a policyholder who is "injured" while occupying a private automobile.  (Docket Entry No. 14, Ex. 1 at 5).  Part II states that the policy only pays benefits "for the appropriate Loss as shown in the Schedule of Losses and Benefits below."  (*Id.*).  The "Schedule of Losses and Benefits" unambiguously states that benefits are paid under Part II only when the policyholder has lost his life or lost one or both hands or feet or complete sight in one or both eyes.  (*Id.*).  No part of the policy other than the "Schedule of Losses and Benefits" provides for the payment of benefits.

The Khoeis contend that the term "Group Accident Insurance Providing Accidental Death and Dismemberment Benefits," and the manner in which the policy uses the term "injury," create ambiguity.  The Khoeis contend that because "Injury" is defined as "Bodily injury caused by an

accident," coverage is not limited to loss of life or of a foot, hand, or eyesight. Reading the policy to cover only "losses" would, according to the Khoeis, make the words "bodily injury" meaningless. The Khoeis make a similar argument about the policy's use of "injury" in the "Exceptions" section.

The Khoeis' arguments are unpersuasive. Read together, the "Coverage" section and the "Schedule of Losses and Benefits" subsection have only one reasonable meaning. Parts I, II, and III of the "Coverage" section define the circumstances in which benefits apply. In relevant part, Part II covers injuries "in consequence of Occupying a Private Passenger Automobile." For injuries covered under Part II, Stonebridge would "pay the applicable benefit specified in . . . the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits." The "Schedule of Losses and Benefits" states that the policy will pay benefits only when the policyholder loses his life, or a hand or foot, or complete sight in one or both eyes. Neither the "Schedule of Losses and Benefits" nor any other policy section states that the policy covers physical injuries other than those causing "Losses." Mr. Khoei's injuries are not covered losses. Stonebridge did not breach the insurance contract in rejecting his claim.

The policy is clear and unambiguous and the Khoeis' breach of contract claim fails as a matter of law.[2] Because the breach of contract claim fails, the extracontractual claims for breach of

---

[2]  The Khoeis appear to argue in the alternative that even if the terms of the policy do not cover Mr. Khoei's injuries, the policy nevertheless covers Mr. Khoei's injuries on the ground that the telemarketer's alleged verbal misrepresentations expanded the scope of the policy beyond its written terms. (*See* Docket Entry No. 21 at 7 ("Texas courts have consistently held that a plausible claim exists when an insurance agent . . . makes oral representations regarding a policy to a customer . . . who relies on those representations to his determinant when the insurance company subsequently denies insurance coverage.")). The cases the Khoeis cite, however, do not stand for the proposition that an insurance agent's verbal misrepresentations that policy coverage is broader than the written terms of the policy expand the scope of coverage beyond the policy's written terms. The cases the Khoeis cited permitted recovery for the insurance agent's misrepresentations, not for breach of contract. *State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908, 916 (Tex. App. 1991); *see also Hernden v. State Farm Lloyds*, No. SA–05–ca–1103, 2006 WL 870663, at *2–3 (W.D. Tex. Mar. 2, 2006) (denying remand because the plaintiffs stated plausible claims under the DTPA and the Texas Insurance Code); *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)

the duty of good faith and fair dealing and claims under the Texas Insurance Code fail as well. *See PPI Tech. Servs., L.P. v. Liberty Mut. Ins. Co.*, 515 F. App'x 310, 315 (5th Cir. 2013) (recognizing that under Texas law, there "can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered" (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)); *see also State Farm Lloyds*, 315 S.W.3d at 532 (holding that "[w]hen the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive").

### B.    Claims Relating to the Telemarketer's Alleged Misrepresentations

Stonebridge moved to dismiss the Khoeis' claims under the DTPA and the Texas Insurance Code relating to the J.C. Penney telemarketer's alleged misrepresentations on the basis of limitations.  Texas law governs the limitations period for the claims.  *See Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1368–69 (5th Cir. 1994).  Under Texas law, the limitations period does not begin to run until the cause of action accrues. *Houston Endowment, Inc. v. Atl. Richfield Co.*, 972 S.W.2d 156, 159 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Generally, a cause of action accrues when facts come into existence that authorize a party to seek a judicial remedy. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)).  In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or whether damages have occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).  The discovery rule provides a "very limited exception to statutes of limitations." *Colonial Penn. Ins. v. Mkt. Planers Ins. Agency, Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998) (internal quotations

---

(plaintiff asserted claims for misrepresentation, failure to disclose, and violations of  the DTPA and Texas Insurance Code).

omitted); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). The discovery rule applies only when the injury the plaintiff suffered is both "inherently undiscoverable" and objectively verifiable. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). An injury is not "inherently undiscoverable" simply because a plaintiff failed to discover it within the applicable limitations period. *Id.* at 735. Rather, the focus is on the nature of the injury itself—whether it is of the type that generally is discoverable by the exercise of reasonable diligence. *Id.* at 734–35.

Texas DTPA and Insurance Code claims must be filed within two years after the date of the violation or within two years after the plaintiff "discovered or in the exercise of reasonable diligence should have discovered" the violation. Tex. Bus. & Com. Code § 17.565 (DTPA); *see* Tex. Ins. Code. art. § 541.162 (Insurance Code). Claims that an insurer misrepresented policy coverage in selling the policy accrue when the policy is issued. *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H–06–cv–2736, 2009 WL 890398, at *16 (S.D. Tex. Mar. 30, 2009) (citing *Mauskar v. Hardgrove*, No. 14–02–00756–CV, 2003 WL 21403464, at *3 (Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.). Misrepresentation claims accrue when the policy is issued because the insured has a duty to read the policy and is responsible for understanding the policy's terms and conditions. *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.); *Amarco Petroleum, Inc. v. Tex. Pac. Indem. Co.*, 889 S.W.2d 695, 699 (Tex. App.—Houston [14th Dist.] 1994, writ denied). If the written policy is different from the representations, the insured has sufficient facts to seek a legal remedy based on the insurer's alleged misrepresentation about the policy. *Mauskar*, 2003 WL 21403464, at *3.

12

The Khoeis' claims that the telemarketer misrepresented the policy coverage are barred by limitations.  Those claims accrued at the latest in 1993, the year the Khoeis obtained the certificate stating the policy terms.  Those terms unambiguously covered only death and dismemberment,  and unambiguously defined that to mean loss of life, loss of one or both hands or feet, or complete loss of sight in one or both eyes.  The Khoeis had the facts needed to seek a judicial remedy when they received the policy certificate.  *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 514.  The discovery rule does not apply because the alleged misrepresentations were not inherently undiscoverable when the claim accrued.  Stonebridge's motion to dismiss the misrepresentation claims under the DTPA and the Texas Insurance Code is granted.

## IV.  Conclusion

Stonebridge's motion to dismiss, (Docket Entry No. 14), is granted.  Final judgment is separately entered.

SIGNED on February 14, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

13